Thomas D. Hoxsey et al.

*v.*

The New Jersey Midland Railway Company et al.

In 1868 and 1869 the New Jersey Western Railroad Company, acting under legislative authority, constructed parts of a railroad in this state, and the complainants and others subscribed and paid for its stock. In 1870 it was consolidated with other railroads, built or to be built, by an act authorizing compensation to such stockholders of the New Jersey Western as were dissatisfied therewith. A mortgage, covering all the property of the consolidated roads, was given, and the legality of the consolidation recognized by subsequent legislation. Against some of the defendants there appeared to be some grounds for applying for relief.—*Held*, that it cannot be satisfactorily determined, on the statements of the bill, whether the complainants have, by acquiescence, lost their rights as stockholders, and the demurrer, being too general, was overruled.

---

Bill for relief on general demurrer.

*Mr. J. W. Taylor*, for demurrant.

*Mr. T. D. Hoxsey*, for complainants.

The Chancellor.

The bill states that the complainants, Thomas D. Hoxsey and John C. Lloyd (who exhibit the bill not only for themselves, but also in behalf of all other stockholders of the New Jersey Western Railroad Company whose stock is similarly situated), own 500 shares of the stock of that company; that the company was

incorporated under a special act of the legislature of this state, approved March 21st, 1867; that in 1868 and 1869 it surveyed and located for itself the route of a railroad from Hawthorne, in Passaic county, to a point at or near Bloomingdale, in that county, and constructed, or nearly constructed, the road so located; that the construction was by means of subscriptions, among which were those of the complainants and the other stockholders in whose behalf the bill is filed, to the capital stock of the company, duly made and paid in for the purpose; that the money received from the subscriptions of those by and for whom the bill is filed largely contributed to the work; that in 1870, an act "to authorize the consolidation of the capital stock, property, powers, privileges and franchises of the New Jersey, Hudson and Delaware Railroad Company with those of the New Jersey Western Railroad Company, the Sussex Valley Railroad Company, and the Hoboken, Ridgefield and Paterson Railroad Company, or any or either of them," was passed and approved; that it provided a plan of consolidation by means of a joint agreement of the companies agreeing to consolidate, but the bill avers that no such agreement was entered into, "by which the rights of the complainants as stockholders in the corporate rights, powers, property, privileges and franchises of the Western company were lost or surrendered," and that the defendants allege that there was a verbal agreement between the stockholders of the Western company and the new company, the consolidation, to the effect that the stockholders of the Western company were to surrender their stock in exchange for stock of some other company which would pay annual dividends of three and a half per cent. The bill, while it denies that there was any such agreement, states that the complainants would have accepted such exchange, but none was ever effected or offered. It further states, substantially, that the Midland company claims to have acquired the rights, franchises and property of the Western company by consolidation.

The suit is brought to vindicate and establish the rights of the complainants as stockholders of the Western company in and to the property and franchises which that company owned at the time

of the alleged consolidation. The bill alleges that they have never surrendered or lost their rights, but that, in violation of those rights, and without any warrant of law or any authority whatever, the franchises of the Western company have been usurped, and its property taken into possession by a company claiming to be a consolidation of which the Western company was an element, and that they have never consented thereto, and that have not been compensated for their stock. On the argument of the demurrer, the only ground assigned was that the claim made by the bill is a stale one.

The act of 1870, before referred to, provided for consolidation by means of a joint agreement for consolidation under the corporate seals of the corporations proposing to consolidate, and subscribing the terms and conditions thereof, and the mode of carrying it into effect, but the agreement of the directors was not to be deemed the agreement of the companies until it should have been ratified or assented to by such number of the stockholders of the respective companies as should represent three-fourths of the capital stock actually subscribed, the ratification to be in writing, and signed by the holders of the stock, or their duly authorized agents or proxies, and acknowledged or proved before an officer authorized to take the acknowledgments of conveyances of real estate. After the making and ratification of such agreement, and the filing of a duplicate or counterpart thereof in the secretary of state's office, and immediately upon and after the first election of directors by the consolidated company, the consolidation was to take effect. The act provided that the new company should be known as the New Jersey Midland Railway Company, and should succeed to the powers, privileges, franchises, obligations and liabilities of the companies consolidated, that all contracts made with either of the companies should be performed and discharged by the consolidated company, and that all property, real, personal and mixed, and all debts due on whatever account, as well as of stock subscriptions and other things in action belonging to the corporations, should be taken and deemed to be transferred to and vested in the consolidated company, without further act or deed; and that all property, rights of way, and all and every other interest, should be as effectually

the property of the New Jersey Midland Railway Company, as they were of the former corporations parties to the agreement. The act provides for the condemnation, on due compensation, of the stock of any stockholder who should dissent from the agreement, the compensation to be paid by the consolidated company; and thereupon and thereby the stock condemned was to be surrendered and assigned to it. The bill states that the defendants claim that a consolidation was duly effected, and the complainants, while they admit that proceedings looking to a consolidation were taken, deny that such proceedings were in anywise valid as against them as stockholders of the Western company. They insist, too, that the mortgages (made in 1870, 1871 and 1873) given by the Midland company, and which covered the Western road, were not valid as against them or their rights, as stockholders in the property which was of the Western company, and that the decree in foreclosure thereof does not affect their rights as such stockholders, because they were not permitted to litigate their rights therein. They allege that though the mortgaged property was sold under the foreclosure by the master, yet it was under protest from them, and an assertion by them of their rights to it. The bill is filed to compel the payment of the claim of the complainants and others, as before mentioned, for their stock, before possession is given under the master's sale, and to that end prays an injunction. It also prays a decree that the defendants be required to pay the amount of the par value of the stock, and interest thereon, and it prays general relief, also. The defendants are Oscar Keen, the master to whom the execution for the sale of the mortgaged premises was directed and delivered, and by whom they were sold; the New Jersey Midland Railway Company; Garret A. Hobart, receiver of that company; George S. Coe, George Opdyke and Abram S. Hewitt, trustees; Jabez P. Pennington, trustee; Garret A. Hobart and John W. McCullough, receivers; Abram S. Hewitt, again, as trustee, and Charles Parsons. All of them, except Mr. Hewitt, have demurred. It does not appear by the bill why some of them were made parties.

So far as the injunction is concerned, the relief sought would

not be granted. The complainants have stood by for many years and have taken no action to protect their claims as stockholders. Not only have the mortgages mentioned in the bill, amounting in the aggregate to $14,500,000, been given on the property of the Midland company, including in it the Western road, but the legislature has, by public act, distinctly and expressly recognized the validity of the consolidation (*P. L. of 1871 p. 1093*), and otherwise recognized the existence of the consolidated company as a corporation. (*P. L. of 1872 pp. 890, 924; P. L. of 1873 p. 969.*) Under such circumstances, and after such apparent acquiescence on the part of the complainants for so long a time, the decree in the foreclosure proceedings would be executed, notwithstanding their claim, and the purchaser under the execution would be put in possession of the mortgaged premises.

But whether the complainants have absolutely lost all their rights as stockholders by acquiescence or not, cannot be satisfactorily determined on the statements of the bill, even with the aid of the acts of the legislature just mentioned. No relief could be granted against Charles Parsons or Jabez Pennington on the bill; for it does not appear why they are made parties; nor against the trustees under the mortgages, or the receivers, for there is no ground laid for it in the bill. But there appears to be a ground of relief, on the statements of the bill, against the Midland company.

The demurrer is too extensive. It will, therefore, be overruled.